1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  FRANCESCA SEBESTYEN,              )  NO. CV 10-4595-SS
                                       )
12                   Plaintiff,        )
                                       )  **AMENDED MEMORANDUM DECISION**
13            v.                       )
                                       )  **AND ORDER**
14  MICHAEL J. ASTRUE,                )
    Commissioner of the Social        )
15  Security Administration,          )
                                       )
16                   Defendant.        )
    _____)

17

18                               **I.**

19                         **INTRODUCTION**[1]

20

21      Francesca Sebestyen ("Plaintiff") brings this action seeking to

22  overturn the decision by the Commissioner of the Social Security

23  Administration (hereinafter the "Commissioner" or the "Agency") denying

24  her application for Disability Insurance Benefits and Supplemental

25  Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C.

26

27  _____

28      [1]  This Amended Memorandum Decision and Order corrects formatting
    errors in the prior Memorandum Decision and Order, but does not change
    any analysis or the outcome.

§ 636, to the jurisdiction of the undersigned United States Magistrate Judge.  For the reasons stated below, the decision of the Commissioner is REMANDED for further proceedings.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on September 27, 2006. (Administrative Record ("AR") at 236).  The Agency initially denied Plaintiff's claim on January 29, 2007.  (AR 107).  Plaintiff filed a Request for Hearing by Administrative Law Judge on February 23, 2007. (AR 113).  On October 22, 2007, Administrative Law Judge ("ALJ") Helen E. Hesse conducted a hearing to review Plaintiff's claim.  (AR 23-51). The ALJ denied benefits on November 15, 2007.  (AR 90-101).  The Appeals Council remanded her case on August 15, 2008.  (AR 102-05).

The ALJ held a second hearing on December 8, 2008.  (AR 52-87). After these hearings, the ALJ again denied benefits on May 12, 2009. (AR 5-17).  Plaintiff again sought review of the ALJ's decision by the Appeals Council on May 28, 2009.  (AR 18-20).  The Appeals Council denied Plaintiff's request on April 23, 2010.  (AR 1-4).  Therefore, the ALJ's decision became the final decision of the Commissioner.  (AR 1). Plaintiff commenced the instant action on June 22, 2010.

\\

\\

\\

\\

\\

**III.**

**FACTUAL BACKGROUND**

Plaintiff was born on December 11, 1973. (AR 236). Plaintiff graduated from high school in 1992. (AR 260). Plaintiff trained as a dental assistant and medical terminology and hospital unit clerk in 1994. (Id.). Plaintiff worked as a hospital records technician and receptionist. (AR 257, 270). Plaintiff last worked in September 2005. (Id.).

**A.    Plaintiff's Medical History**

Plaintiff alleges that her disability began on September 11, 2005. (AR 256). Plaintiff said she fell into a depression after her son passed away. (Id.). Plaintiff said that she was "unable to communicate and function to perform [her] daily duties. [She] ended [her] employment due to [her] condition." (Id.).

Plaintiff reported suffering from asthma. (AR 30). Additionally, she also has a history of suffering with gastritis and ulcers. (AR 346). Plaintiff suffered from abdominal pain that she would visit the emergency room to treat. (AR 381). Plaintiff took medication for her ulcers and relied on multiple inhalers for her asthma. (AR 300).

Plaintiff said she suffers from crippling depression which prevents her from working. (AR 256). Plaintiff's depression stems from her son's drowning in 2005. (AR 36, 256). Plaintiff said that her depression prevents her from staying focused, going outside, and

communicating well with others. (AR 256). Plaintiff also claimed that she constantly cries. (Id.). Plaintiff said that she is unable to be around young children. (AR 40).

Plaintiff claimed that she is unable to function and remains at home and inside most of the day. (AR 278-79). Plaintiff reported that she was able to take care of herself and her family by cleaning the apartment, making meals, and doing laundry. (AR 279-80). However, Plaintiff also stated that she did little cooking or cleaning at home. (AR 66-67).

Dr. Rolando Espinoza treated Plaintiff since 2005 for depression. (AR 369, 409). Dr. Espinoza said that Plaintiff was suffering from major depression. (AR 409). Dr. Espinoza also found, in 2007, that Plaintiff "continues to undergo Individual Psychotherapy treatment as well as taking psychotropic medications . . . ." (AR 369). Dr. Espinoza found that Plaintiff had symptoms of agoraphobia which prevented her from going out of the house. (Id.).

Dr. Jason H. Yang conducted a psychiatric evaluation on Plaintiff on January 2, 2007. (AR 350-54). Dr. Yang noted that Plaintiff had seen a therapist on a regular basis. (AR 350-51). Dr. Yang found that Plaintiff claimed to have severe limitations in functioning. (AR 353). However, Dr. Yang's did not agree with Plaintiff's asserted limitations. (See id.). Dr. Yang found that Plaintiff was capable of taking care of her own needs. (Id.). Dr. Yang added:

1    This claimant is able to focus attention adequately.  She is
2    able to follow one and two part instructions.  The claimant
3    can adequately remember and complete simple and complex
4    tasks.  She is able to tolerate the stress inherent in the
5    work environment, maintain regular attendances, and work
6    without supervision.  In addition, she was able to interact
7    appropriately with myself and staff, and I imagine that she
8    would be able to interact appropriately with supervisors,
9    coworkers, and the public in the workplace.

11  (Id.).  Dr. Yang concluded that Plaintiff's prognosis was fair and that
12  she was able to make "simple social, occupational, and personal
13  adjustments."  (Id.).

15  Dr. Frank Williams, a psychiatrist, also examined Plaintiff.  (AR
16  355-366).  Dr. Williams diagnosed Plaintiff with a depressive disorder.
17  (AR 358).  However, Dr. Williams noted that Plaintiff's condition only
18  created mild functional limitations.  (AR 363).  Dr. Williams also found
19  that while Plaintiff's medical records did refer to therapy for
20  depression, there is very little mention or notes regarding therapy.
21  (AR 365).

23  Plaintiff produced records of her treatment for depression.  (AR
24  469-507).  Some of the sessions were one-on-one while others involved
25  group therapy.  (See AR 486-87).  However, in several sessions, both
26  group and one-on-one, Plaintiff would spend minimal time with a
27  therapist.  (See AR 483-84, 490, 491, 502).  Plaintiff repeatedly did
28  not appear for therapy sessions.  (AR 485, 488, 504, 505).  Plaintiff

5

said that she did not attend some sessions because she was unable to "get out of bed." (AR 59).

Two medical experts also testified about Plaintiff's condition after reviewing her medical records. (AR 38-47, 58-73). The first medical expert, Dr. Joseph Melancharvil, said that Plaintiff's records did not show "any type of substantial history of psychiatric treatment." (AR 40). Dr. Melancharvil questioned the treating doctor's time table for Plaintiff's recovery. (AR 41-2). Dr. Melancharvil said that Plaintiff was only moderately restricted in her ability to work. (AR 43). Dr. Melancharvil said that Plaintiff should not perform fast-paced work or safety operations. (AR 44).

The other medical expert, Dr. Craig Rath[2], also testified about Plaintiff's condition. (AR 58-73). Dr. Rath noted that there are lots of "discrepanc[ies] in the record among various sources." (AR 64). Dr. Rath particularly noticed a third party testimony from a person Plaintiff claimed to not know as a cause for conflict with Plaintiff's testimony. (AR 62-63, 66). Dr. Rath said that Plaintiff was only had moderate functional limitations. (AR 64). Dr. Rath limited Plaintiff to performing work that included only moderately complex tasks with moderate stress. (AR 66).

\\
\\

---

[2] The Court notes that Dr. Rath's name is spelled differently in the ALJ's opinion and in the hearing transcript. (Compare AR 14, with AR 58). For simplicity, the Court uses the spelling from the ALJ's opinion.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

"To qualify for disability benefits, a claimant must show that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity[3] and that the impairment is expected to  result in death or to last for a continuous period of at least twelve months." Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[3]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(3)  Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

\\

\\

**<u>The ALJ Failed To Provide Specific And Legitimate Reasons Supported By Substantial Evidence For Rejecting Plaintiff's Treating Physician's Opinion</u>**

Plaintiff contends that the ALJ's rejection of the opinion of the treating physician, Dr. Espinoza, is not based on specific and legitimate criteria. (Memorandum in Support of Complaint ("Complaint Memo.") at 11-14). Specifically, Plaintiff asserts that Dr. Espinoza's opinion was not conclusory, that Plaintiff did not receive conservative treatment, that Plaintiff's allegations of agoraphobia are consistent with the record, and that Dr. Espinoza's medical opinion should not have been rejected because he was "unfamiliar" with the legal definition of a disability. (<u>Id.</u>). This Court agrees with Plaintiff's contentions.

Physicians with the "most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships." <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008). The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57 (9th Cir. 2002); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989); <u>see also</u> 20 C.F.R. § 404.1527(d). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and

convincing" reasons.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)

(as amended).  Even if the treating physician's opinion is contradicted

by another doctor, the ALJ may not reject this opinion without providing

<u>specific, legitimate reasons, supported by substantial evidence in the</u>

<u>record</u>.  <u>Id.</u> at 830-31 (emphasis added); <u>see also</u> <u>Orn v. Astrue</u>, 495

F.3d 625, 632 (9th Cir. 2007); <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d

1194, 1198 (9th Cir. 2008). If a reason is not supported by the record,

it is not legitimate.  <u>See</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1464 (9th

Cir. 1996) (holding that "the ALJ erred because he neither explicitly

rejected the opinion of [the examining psychologist], nor set forth

specific, legitimate reasons for crediting [the non-examining

psychologist] over [the examining psychologist].").

    In her opinion affirming the agency's decision to deny Plaintiff

disability benefits, the ALJ provided four main rationales for rejecting

the findings of Dr. Espinoza.  First, the ALJ found Dr. Espinoza's

opinion to be "quite conclusory" because he "provid[ed] very little

explanation of the evidence" upon which he relied in forming his

opinion.  (AR 14).  Second, the ALJ found that Dr. Espinoza's opinion

was not "consistent with the nature and extent of the claimant's

treatment which . . . has been generally conservative, with medications

and supportive counseling."  (AR 14).  Third, the ALJ also noted that

she rejected Dr. Espinoza's opinion that Plaintiff showed symptoms of

agoraphobia because Plaintiff's sister, Aniko Sebestyen ("Sebestyen"),

"cannot be considered a completely impartial witness based on her

relationship to the claimant" and that her "testimony is not consistent

with the observations and opinions of qualified mental health

professionals in this case."  (AR 14).  In making the determination that

11

Plaintiff can "go places," the ALJ relied on the third party function report of a friend and on the psychiatric evaluation by Dr. Jason Yang ("Yang") who noted that Plaintiff does "household chores, errands, shopping, and cooking" and "attends a Christian church." (AR 11, 262-69, 353). Finally, the ALJ found that "[w]hile Dr. Espinoza stated that the claimant was disabled, it is not clear that he was familiar with the definition of disability contained by the Social Security Act and regulations." (AR 14). The Court will address each reason in turn.

## 1. The ALJ Erred In Rejecting Dr. Espinoza's Findings As Conclusory

The ALJ's finding that Dr. Espinoza's medical opinion was conclusory is not supported by the record. Dr. Espinoza supported his opinion with extensive treatment notes. If his final opinion is considered in combination with his treatment notes, then his final opinion cannot be fairly characterized as "conclusory." (See AR 411-15). Dr. Espinoza offered his diagnosis of Plaintiff's medical condition, his progress notes, and his assessment of her ability to work. (AR 393, 400-01, 404-07, 409, 411-15).[4] Although Dr. Espinoza's treatment notes are, in part, difficult to read, the notes do lend support to his final opinion regarding Plaintiff's condition from

---

[4] The record contains numerous progress notes from Dr. Espinoza which indicate his observations and the status of Plaintiff's treatment on the following dates: 10/6/2005, 10/18/2005, 11/4/2005, 11/18/2005, 12/3/2005, 1/23/2006, 3/1/2006, 3/20/2006, 8/3/2006, 2/20/2007, 3/17/2007, 9/10/2007, and 10/19/2007. (See AR 411-15).

October 2005 until October 2007.[5]  To the extent the ALJ rejected Dr.

Espinoza's opinion as conclusory, that reason is not supported by the

record.

**2.    The ALJ Erred In Finding That Plaintiff Received Conservative Treatment**

The ALJ erred in concluding that Plaintiff only received

conservative treatment for her psychiatric condition.  Plaintiff's

treatment consisted of medication and therapy, and Plaintiff testified

that she saw Dr. Espinoza twice a month for 45 minutes.  (AR 39, 369,

393, 409).  Dr. Espinoza's notes describe his observations and the

status of Plaintiff's treatment from 2005 until 2007 on thirteen

different occasions.  (See AR 411-15, supra n.3).  The Court notes that

the record is unclear as to the number and frequency of all of the

medications prescribed to plaintiff, but the record reflects that she

took numerous prescription drugs.  (AR 45, 59, 447).[6]  Plaintiff also

---

[5]    Even if the ALJ found Dr. Espinoza's progress notes to be
difficult to read or interpret, she had the option of conducting an
appropriate inquiry to be able to specifically address the findings of
the treating physician.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150
(9th Cir. 2001) (noting that "[a]mbiguous evidence, or the ALJ's own
finding that the record is inadequate to allow for proper evaluation of
the evidence, triggers the ALJ's duty to conduct an appropriate
inquiry." (internal quotation marks omitted)).

[6]   Plaintiff was examined by Dr. Carlos Pieroni, a Tri-City Mental
Health staff psychiatrist on March 13, 2008, who diagnosed Plaintiff
with major depressive disorder ("MDD") and prescribed Cymbalta, Paxil,
Valium, and Rozerem.  (AR 445-47).  Plaintiff also reported taking
Oxazepam and Paraxetine Hydrochloride for nervousness and brain
imbalance. (AR 259).  Plaintiff's family practitioner also prescribed
Paxil and Restoril.  (AR 45).

13

attended some therapy sessions, in both group and one-on-one sessions, however Plaintiff spent minimal time with a therapist.  (AR 469-507). The ALJ's opinion did not indicate what further treatment was appropriate for this type of psychiatric condition.  Plaintiff's therapy and thirteen visits with Dr. Espinoza, as well as her prescriptions for at least seven medications cannot be fairly characterized as "conservative" treatment.  The ALJ's conclusion that Plaintiff received only "conservative" treatment is not supported by the record.

**3.    The ALJ Erred In Rejecting Dr. Espinoza's Finding That Plaintiff Suffers From The Symptoms of Agoraphobia**

The ALJ failed to provide specific and legitimate reasons to reject Dr. Espinoza's conclusion that Plaintiff suffers from Agoraphobia. (See AR 14).  Dr. Espinoza found that the Plaintiff "presents symptoms of [a]goraphobia, which often times prevents her from going out of her house." (AR 369).  Plaintiff testified that she "can't handle groups of people or young kids" and that "[i]t's hard for [Plaintiff] to be around mothers that have a small child."  (AR 69).  Plaintiff also expressed her fear of "be[ing] in the general public."  (AR 40). Sebestyen testified that "[Plaintiff] doesn't do anything . . . [s]he stays at home" and that she does not participate in any social activities at all.  (AR 81, 84).

The ALJ concluded that Plaintiff's testimony contradicted a third party function report by a friend, but did not specify the contradiction.  Furthermore, medical expert Melancharvil testified that although he "doubt[ed]" that Plaintiff suffered from agoraphobia, he

14

noted that "[t]heoretically it is possible." (AR 14, 46, 262-69). The ALJ found Sebestyen's testimony unreliable and rejected the opinion of Dr. Espinoza and the testimony of Plaintiff because Plaintiff "attends church, runs errands, and goes shopping." (AR 14). However, the fact that Plaintiff may feel comfortable enough to occasionally attend church or complete basic errands does not overcome the medical evidence and testimony demonstrating that her agoraphobia would interfere with her ability to interact in the workplace. (See AR 11, 14, 353). Plaintiff's testimony, as well as that of Sebestyen, provide substantial evidence for Dr. Espinoza's opinion that Plaintiff suffers from the symptoms of agoraphobia. The ALJ did not "set forth specific, legitimate reasons for crediting [the non-examining psychologist] over" Dr. Espinoza. See Van Nguyen, 100 F.3d at 1464. Accordingly, this ground for rejecting the treating physician's opinion does not qualify as a "specific and legitimate" reason.

**4.    The ALJ Erred By Rejecting Dr. Espinoza's Medical Opinion On The Grounds That The Doctor Was Not "Familiar With The Legal Definition Of Disability"**

The ALJ's finding that Dr. Espinoza may have been unfamiliar with the legal definition of a disability is not a proper reason to discount or reject his medical opinion as to Plaintiff's alleged disability. (See AR 14). While the ultimate legal determination of whether a claimant is disabled is reserved to the Commissioner, Dr. Espinoza's opinion on her medical condition should be given the weight and authority required for treating physicians. See 20 C.F.R. § 416.927(e); 20 C.F.R. § 404.1527(d). As noted above, physicians with the "most

15

significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships." Carmickle, 533 F.3d at 1164. As the treating physician, Dr. Espinoza's findings and treatment notes should have been given the greatest weight by the ALJ. To the extent that the ALJ rejected or discounted Dr. Espinoza's medical opinion on the grounds that the doctor was unaware of the legal definition of a disability used by the agency, this reason is not "specific and legitimate" because the doctor is not required to give an opinion on the ultimate issue of disability.

The Court does not reach the remaining issues because they are not necessary to the resolution of the action. Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ failed to provide specific and legitimate reasons for rejecting the treating physician's opinion, or, instead, to fully credit the opinion, the case must be remanded to remedy this defect. Upon remand, the ALJ must either provide specific and legitimate reasons to reject Dr. Espinoza's opinion or incorporate the limitations provided by Dr. Espinoza's opinion into the RFC determination.

\\
\\
\\
\\
\\

16

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 3, 2011.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE